**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES *ex rel*. BILLY SPRINKLE (#C15277), | ) ) ) | |
| Petitioner, | ) ) | Case No. 12 C 0288 |
| v. | ) ) | |
| ALEX DAWSON, Warden, Logan Correctional Center, | ) ) ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Billy Sprinkle's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(2). For the following reasons, the Court denies Sprinkle's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

In 1969, Sprinkle pleaded guilty to charges of murder and deviate sexual assault, and the Circuit Court of Will County sentenced him to an indeterminate term of 75 to 90 years in prison. In 1977, while incarcerated, Sprinkle was convicted of aggravated battery and was sentenced to a consecutive indeterminate term of one to ten years. By operation of state law, Sprinkle's consecutive sentences were combined into a single indeterminate term of 76 to 100 years. Sprinkle was paroled in 1981, but after he violated his parole, he was re-incarcerated in 1986. He was paroled again in 1990, and was re-incarcerated in 2001 for parole violations.

In September 2009, Sprinkle sought federal habeas relief in this Court alleging that the Illinois Department of Corrections ("IDOC") failed to award him day-for-day good conduct

credit. On October 29, 2009, the Court dismissed Sprinkle's habeas petition without prejudice because he had failed to exhaust his state court remedies. Thereafter, on December 15, 2009, Sprinkle filed a complaint for mandamus relief in the Circuit Court of Logan County, Illinois asking the state court to compel recalculation of his sentence and order his immediate release on the ground that the IDOC had wrongfully denied him day-for-day good conduct credit. In April 2010, the Circuit Court granted Respondent's motion to dismiss Sprinkle's mandamus complaint, after which Sprinkle filed an appeal in the Illinois Appellate Court, Fourth District. On May 13, 2011, the Illinois Appellate Court affirmed the Circuit Court's dismissal of Sprinkle's mandamus complaint. *See Sprinkle v. Randolph,* No. 04-10-0378 (4th Dist. 2011) (unpublished). Thereafter, Sprinkle filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois regarding his good conduct credit claim and on September 28, 2011, the Supreme Court of Illinois denied Sprinkle's PLA.

On January 13, 2012, Sprinkle filed the present pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(2). Construing Sprinkle's pro se habeas petition liberally, *see Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012), he contends that: (1) IDOC is violating his due process and equal protection rights by failing to award him good conduct credit for time served after February 1, 1978; and (2) IDOC is violating Illinois statute 730 ILCS 5/3-3-10(b)(1) for failing to award good conduct credit for time served following his parole revocations. It is undisputed that Sprinkle has exhausted these claims.

## LEGAL STANDARD

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the

United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. §

2254(a)). Sprinkle brings his habeas petition pursuant to 28 U.S.C. § 2254(d)(2), arguing that

the Illinois Appellate Court's opinion "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." As the Seventh Circuit teaches,

a "petitioner's challenge to a state court decision based on a factual determination under §

2254(d)(2) will not succeed unless the state court committed an 'unreasonable error.'" *Morgan*

*v. Hardy,* 662 F.3d 790, 798 (7th Cir. 2011).

Sprinkle, however, does not present clear and convincing evidence challenging the

statement of facts in the last state court decision to address his arguments on the merits, which

was the Illinois Appellate Court's opinion in Sprinkle's mandamus action. *See* 28 U.S.C. §

2254(e)(1). Instead, he is challenging IDOC's calculation of his good conduct credits based on

Illinois law. Therefore, Sprinkle's argument is not that the state court committed an

unreasonable factual error, but that IDOC applied the wrong system in calculating his good

conduct credits.

## ANALYSIS

## I.    Constitutional Claim

In his first habeas claim, Sprinkle asserts that IDOC is violating his due process and

equal protection rights by failing to properly award him good conduct credit for time served after

February 1, 1978. *See Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007) ("Prisoners have a

liberty interest in their good-time credits and credit-earning class and thus must be afforded due

process before prison officials interfere with those rights."). In particular, Sprinkle argues that

because IDOC is improperly calculating his good conduct credit, IDOC is violating his

constitutional rights resulting in him serving time past his maximum outdate.

Sprinkle's indeterminate sentence – which began in 1969 – spans a time period in which IDOC used two systems to calculate a prisoner's good conduct credit. The Supreme Court of Illinois explains the first system as follows:

> Until February 1, 1978, Illinois had a system of indeterminate sentences in which those committed to the Department of Corrections for commission of a felony were sentenced to minimum and maximum terms of imprisonment. Good-conduct credits were applied to the minimum term to advance the date of parole eligibility and to the maximum to advance the date beyond which a prisoner could not be incarcerated. The Department was required to prescribe, at a rate within its discretion, a schedule of good-conduct credits for good behavior. These were known as "statutory good time credits." The Department was also empowered to award good-conduct credits to prisoners who performed work assignments or participated in other Department programs. These credits were known as "compensatory good time credits."

*Johnson v. Franzen,* 77 Ill.2d 513, 516, 34 Ill.Dec. 153, 397 N.E.2d 825 (Ill. 1979) (internal citations omitted). "Under this formula, inmates were eligible to receive progressively increased 'statutory good time credits' during their first six years of incarceration until they reached an annual maximum of six months of good time credit (exclusive of credit for participation in work programs) in the sixth year of their prison term." *Barksdale v. Franzen,* 700 F.2d 1138, 1139 (7th Cir. 1983). This older system is often referred to as "the statutory and compensatory formula" because there were two components – statutory good time credits and additional compensatory good conduct credits that are awarded to prisoners who performed work assignments. *See Johnson,* 77 Ill.2d at 516; *Barksdale,* 700 F.2d at 1139-40.[1]

---

[1] In September 1975, IDOC altered the regulation for compensatory good conduct credit because there were not enough inmate jobs available. The amended regulation allows compensatory good time for all inmates eligible under the old system. *See Hampton v. Rowe,* 88 Ill.App.3d 352, 355, 43 Ill.Dec. 511, 410 N.E.2d 511 (3d Dist. 1980) ("compensatory good time is no longer correlated to rehabilitation or satisfactory performance of work assignments, but is available to all prisoners within the Department").

As of February 1, 1978, the Illinois General Assembly amended the Unified Code of Corrections awarding day-for-day good conduct credits. *See id.* at 1139; *Johnson,* 77 Ill.2d at 516. The new system provides that prisoners are entitled to one day of good conduct credit for each day of service in prison to the extent that the prisoner's conduct merits the award of credit. *See Johnson,* 77 Ill.2d at 522; *Mosley v. Moran,* 798 F.2d 182, 183 (7th Cir. 1986) (good conduct credit is calculated solely on the basis of time served with good behavior). Meanwhile, "[i]n order to permit a prisoner to participate in the more beneficial of the two separate good time credit plans, the Department of Corrections continue[s] to apply the statutory and compensatory formula to reduce the prison terms of inmates for whom the statutory and compensatory formula [i]s more favorable than the day-for-day plan." *Barksdale,* 700 F.2d at 1140. "[T]he statutory and compensatory method and the day-for-day formula are two entirely separate and distinct time computation methods, and [] inmates are not eligible to have their prison terms reduced under both formulas at the same time." *Id.* at 1141-42.

Due to Sprinkle's lengthy sentence, IDOC continues to apply the statutory and compensatory formula of good time credit because is its more beneficial than the application of the day-for-day system. (*See* R. 7, Habeas Pet., Ex. 4, 8/19/08 IDOC letter.) Specifically, under the statutory and compensatory formula, Sprinkle is eligible for statutory time, namely six months a year, along with compensatory time of 7.5 days per month, which amounts to three extra months a year. *See McGee v. Snyder,* 342 Ill.App.3d 274, 276, 277 Ill.Dec. 78, 795 N.E.2d 445 (2d Dist. 2003) (compensatory credits are "awarded at a rate of 7 ½ days each month for the entire sentence, equaling three months per year"). In other words, in the sixth year of his incarceration, Sprinkle started earning up to nine months of good conduct credits each year. *See*

*id.* On the other hand, under the day-for-day good time credit system, Sprinkle would be eligible for approximately six months a year, but would not get the extra three months of time under the compensatory component of the pre-1978 system. *See id.* ("Under the day-for-day system, a prisoner would earn one day of good-conduct credit for each day served in prison, thereby receiving six months of good-conduct credits each year.").

Nevertheless, Sprinkle contends that he is entitled to the day-for-day credit and not the "abolished" 7.5 days per month credit. Sprinkle, however, does not address the fact that he is not only getting 7.5 days per month of compensatory good time credit under the old system, he is also getting an additional six months of statutory good time credit for a total of nine months of good time credit a year – three more months per year than the day-for-day credit. Meanwhile, Sprinkle's argument in his reply brief that he should earn twelve months of good conduct credit a year is simply not supported by the statute or Illinois cases in which day-for-day good time credit under the post-1978 system amounts to six months a year. *See McGee,* 342 Ill.App.3d at 276; *McGee v. Snyder,* 326 Ill.App.3d 343, 346, 260 Ill.Dec. 209, 760 N.E.2d 982 (2d Dist. 2001) ("Following the change, prisoners were entitled to day-for-day credit at the rate of six months per year during their entire sentence.").

In addition, relying on a 1989 case from the United States District Court for the Northern District of Illinois, Sprinkle argues that IDOC should have subtracted all of his good time credits "in one lump sum" at the outset of his incarceration. *See Walker v. O'Leary,* 727 F.Supp. 444, 448 n.3 (N.D. Ill. 1989) ("Rather than apply the credits to a sentence as the credits are earned, the Department of Corrections subtracts these credits from the minimum and maximum sentences in one lump sum at the outset of a prisoner's incarceration."). The Court respectfully

6

disagrees with the *Walker* decision and notes that the proposition set forth in footnote 3 is not supported with any legal authority. In addition, a 1981 Illinois Appellate Court decision unequivocally states as follows:

> It is evident from the language and structure of this Administrative Regulation, as well as from the inherent nature of statutory good-time credits, that the Department's policy was to award statutory good-time credit based upon a prisoner's good behavior during the time he served. Stated more simply, statutory good-time credits were earned by prisoners when they served time without infractions of the rules and regulations of the Department. As an example, a person sentenced to 25 years did not earn 6 years and 3 months good-time credit by being sentenced or by beginning his incarceration. He would earn that amount by serving his sentence on good behavior.

*See Williams v. Irving,* 98 Ill.App.3d 323, 328, 53 Ill.Dec. 746, 424 N.E.2d 381 (3d Dist. 1981). In short, Sprinkle's argument that he should be awarded his good time credit "up front" is not supported by controlling legal authority. *See Rogers v. Prisoner Review Bd.,* 181 Ill.App.3d 1039, 1044, 130 Ill.Dec. 777, 537 N.E.2d 1106 (3d Dist. 1989) (good conduct "credit does not accrue or vest until the prisoner actually serves the applicable time with good behavior."). To clarify, because federal courts defer to state courts' interpretations of state laws, *see Gresham v. Peterson,* 225 F.3d 899, 908 (7th Cir. 2000), the Court must follow the Illinois Appellate Court cases which hold that inmates do not earn their good conduct credit at the beginning of their incarceration. *See Williams,* 98 Ill.App.3d at 328.

Sprinkle's remaining argument that the old system of calculating good time credits was abolished ignores post-*Johnson* modifications made to good conduct credit calculations. More specifically, the "Illinois Supreme Court in *Johnson v. Franzen* required that the day-for-day system be used in computing a prisoner's good time credits after February 1, 1978. Later cases have explained, however, that for any prisoner sentenced prior to the effective date of the day-

for-day system, the more beneficial of the two good conduct credit systems should be applied to the post February 1, 1978 period of incarceration." *Rogers,* 181 Ill.App.3d at 1042.

In sum, Sprinkle's arguments do not support his equal protection or due process claims based on IDOC's calculations of Sprinkle's good time credit under the old system. *See Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (the due process clause is not triggered by unintentional or negligent acts); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed. 2d 393 (1984) (intentional deprivation of property does not violate due process as long as adequate state post-deprivation remedies exist); *David K. v. Lane,* 839 F.2d 1265, 1271 (7th Cir. 1988) ("the Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers") (citations omitted). Indeed, the State of Illinois afforded Sprinkle sufficient due process through the State's mandamus proceedings. *See New Burnham Prairie Homes, Inc. v. Burnham,* 910 F.2d 1474, 1480 (7th Cir. 1990). Because IDOC's calculations do not violate Sprinkle's constitutional rights, the Court denies Sprinkle's first habeas claim.

## II.    State Law Claim

Next, Sprinkle maintains that IDOC is violating 730 ILCS 5/3-3-10(b)(1), which he argues mandates that IDOC award him day-for-day good conduct credit for the time he served following his parole revocations. Habeas relief, however, depends on a demonstration that Sprinkle is in custody in violation of the United States Constitution. *See Payne v. Brown,* 662 F.3d 825, 828-29 (7th Cir. 2011); 28 U.S.C. § 2254(a). As such, whether the IDOC misapplied 730 ILCS 5/3-3-10(b)(1) is not a cognizable claim on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of

a federal habeas court to reexamine state-court determinations on state-law questions");
*Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves
are not cognizable on habeas review"). Put differently, a "violation of state law is not the basis
for federal collateral relief." *Johnson v. Acevedo,* 572 F.3d 398, 402 (7th Cir. 2009). As the
Seventh Circuit explains, the "remedial power of a federal habeas court is limited to violations of
the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a
right under federal law can the federal court intervene." *Perruquet,* 390 F.3d at 511. The Court
therefore denies Sprinkle's second habeas claim.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254
Proceedings, the "district court must issue or deny a certificate of appealability when it enters a
final order adverse to the applicant." Accordingly, the Court must determine whether to grant
Sprinkle a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of
his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v.
Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,*
641 F.3d 830, 832 (7th Cir. 2011). A habeas petitioner is entitled to a certificate of appealability
only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,*
537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. §
2253(c)(2). Under this standard, Sprinkle must demonstrate that "reasonable jurists could debate
whether (or, for that matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, jurists of reason would not debate the Court's conclusion that IDOC did not violate Sprinkle's equal protection or due process rights by calculating his good conduct credit under Illinois' pre-1978 system. Also, because Sprinkle's second habeas claim is not cognizable on habeas review, the Court declines to issue a certificate of appealability on this claim. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Sprinkle's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d)(2).

**Dated:** June 4, 2012

ENTERED

AMY J. ST. EVE
**United States District Judge**